T.C. Memo. 1995-500


UNITED STATES TAX COURT


DEBORAH LYNN ISRAEL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7488-94.              Filed October 17, 1995.


Deborah Lynn Israel, pro se.

<u>Lyle B. Press</u>, for respondent.


MEMORANDUM OPINION


DINAN, <u>Special Trial Judge</u>:   This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182.[1]

---

[1]    Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's 1990 Federal income tax in the amount of $5,285 and an accuracy-related penalty in the amount of $1,012.

After concessions by respondent,[2] the sole issue for decision is whether $13,808 of rental payments paid by petitioner's former spouse pursuant to the terms of a separation agreement constitute taxable alimony under section 71.

Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference. Petitioner resided in New York, New York, on the date the petition was filed in this case.

Petitioner and her former spouse, Dr. Israel, were married on June 28, 1970, and one son was born of their marriage. Marital difficulties arose and petitioner and Dr. Israel ultimately separated.

On June 10, 1987, petitioner and Dr. Israel entered into a separation agreement. Article III of the separation agreement labeled "Maintenance" in pertinent part stated as follows:

> a. [Dr. Israel] agrees to pay, and [petitioner] agrees to accept the sum of one hundred fifty ($150.00) dollars per week as and for maintenance (alimony). Same shall be due and payable the first Friday after the execution of this agreement, and shall continue to [be] payable until the earliest of the following:

---

[2] Respondent conceded that the amount in issue is $13,808, that petitioner is entitled to claim head of household filing status, and that petitioner is not liable for the accuracy-related penalty under section 6662(a).

1.  Payment of same for a total of one hundred thirty
    (130) weeks; or

2.  [Dr. Israel's or petitioner's] death; or

3.  [Petitioner's] remarriage

b. Additionally, [Dr. Israel] agrees to pay as
additional maintenance, [petitioner's] rent at 167 E. 82nd
Street. [Emphasis added.]

Article III, paragraph c, of the separation agreement
further provided that Dr. Israel was to make scheduled lump-sum
maintenance payments to make up for arrearages in maintenance.
The separation agreement stated that the scheduled lump-sum
maintenance payments were income to petitioner.  On June 10,
1990, Dr. Israel made a $5,000 scheduled maintenance payment to
petitioner.

Article III, paragraph d, of the separation agreement stated
that, in the event that their son resided with Dr. Israel for
more than half the year, Dr. Israel's "obligation under paragraph
b of this Article shall be reduced to 1/3 of the rental
obligation".

Article IV provided for numerous contingencies in the event
that the apartment "is offered for conversion or sale" and in
pertinent part provided as follows:

> [Dr. Israel] may, at his option, purchase the apartment
> at the insider price.  If he does, upon resale [petitioner]
> shall receive: (a) 42 1/2% of the difference between the
> insider & outsider price as set forth in the final
> prospectus (blackbook) and (b) 10% of the net gain over and
> above the insider price.  In the event the net sale price is
> less than the outsider price, [petitioner] shall receive

42 1/2% of the difference between the net sale price and the insider price. Net sale price shall be defined as sale price less closing costs and reasonable attorneys fees.

Additionally, Article VI of the separation agreement provided for child support.

On August 4, 1988, by Judgment of Divorce, petitioner was divorced from Dr. Israel (Judgment of Divorce).[3] The separation agreement was incorporated by reference but not merged into the Judgement of Divorce. On June 24, 1994 the Judgment of Divorce was modified (modification).[4] The modification in pertinent part stated:

6. The parties acknowledge that [Dr. Israel] may have overstated the amount of maintenance he had paid to [petitioner] during calendar years 1990, 1991 and 1992. To the extent that the amount claimed by [Dr. Israel] as a maintenance deduction exceeded the amount he was entitled to claim in accord with the [separation] Agreement, [Dr. Israel] agrees to indemnify and hold harmless [petitioner] for any liability imposed by the Internal Revenue Service, the State of New York and the City of New York for such overstatement. [Emphasis added.]

During 1990, Dr. Israel paid petitioner $5,000,[5] which petitioner reported on her 1990 Federal return as taxable alimony. Also, during the year in issue, pursuant to the terms

---

[3] Judgment of Divorce dated August 4, 1988, by the Supreme Court of the State of New York in and for the County of New York.

[4] By Court Order Dated June 24, 1994, from the Family Court of the State of New York, County of New York.

[5] The $5,000 maintenance payment was made pursuant to Article III, paragraph c, of the separation agreement.

of Article III, paragraph b, of the separation agreement, Dr. Israel paid petitioner's rent totaling $13,808 for the apartment she and their son occupied at 167 East 82nd Street in New York City.

The only issue for decision is whether the rental payments of $13,808 made by Dr. Israel constitute taxable alimony. Petitioner contends that because of the contingencies in the separation agreement, the rental payments constitute a property settlement or child support. Respondent contends that the rental payments constitute alimony.

Petitioner bears the burden of proving that respondent's determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).

Section 71(a) provides that gross income includes amounts received as alimony or separate maintenance payments. In general, an alimony or separate maintenance payment is any cash payment received by the payee spouse or made to a third party "on behalf of" the payee spouse that meets the four requirements of section 71(b)(1).

Section 71(b)(1) provides:

(1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if --

(A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

(B) the divorce or separation instrument does not designate such payment as a payment which

is not includible in gross income under this section and not allowable as a deduction under section 215,

(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for the payments after the death of the payee spouse.

The regulations provide that, assuming the four requirements are satisfied, a payment of cash by the payor spouse to a third party under the terms of a divorce or separation instrument will qualify as a payment of cash which is received "on behalf of" a spouse. Moreover, "cash payments of rent * * * made under the terms of the divorce or separation instrument will qualify as alimony or separate maintenance payments." Sec. 1.71-1T(b), Q&A-6, Temporary Income Tax Regs., 49 Fed. Reg. 34455 (Aug. 31, 1984).

However, section 71(c)(2) states:

* * * if any amount specified in the instrument will be reduced--

(A) on the happening of a contingency specified in the instrument relating to a child (such as attaining age, marrying, dying, leaving school, or a similar contingency) * * *

an amount equal to the amount of such reduction will be treated as an amount fixed as payable for the support of children of the payor spouse.

Child support payments are not included in the payee spouse's gross income as amounts received as alimony or separate maintenance. Sec. 71(c).

First, the rental payments were made pursuant to a separation instrument as required by section 71(b)(1)(A).

Secondly, the separation agreement did not designate the payment as one that is excluded from treatment as alimony under section 71 and section 215. Sec. 71(b)(1)(B). In this case, to the contrary, the separation agreement designates the rental payments as "additional maintenance" and therefore meets the section 71(b)(1)(B) requirement.

Thirdly, the parties were legally separated and not members of the same household during 1990; thus the provisions of section 71(b)(1)(C) are satisfied.

Finally, Dr. Israel is not obligated to pay petitioner's rent after her death.

Petitioner testified that "the lease has always been in [her] ex-husband's name." Upon the death of petitioner, Dr. Israel as lessee may continue to be contractually obligated on the lease, but the lease payments would not continue to be made "on behalf of" petitioner. We find that Dr. Israel's obligation to pay petitioner's rent "on behalf of" petitioner would cease on petitioner's death.

The rental payments satisfy the section 71(b) requirements. We find that petitioner's contention that the rental payments are

a property settlement because of the contingencies contained in Article IV of the separation agreement is without merit. There is no evidence in the record that the payments are anything other than rental payments. Furthermore, we note that the subsequent modification does not affect our decision.

However, pursuant to Article III, paragraph d of the separation agreement Dr. Israel's obligation to pay petitioner's rent is reduced to one-third of the rental obligation in the event their son resided with Dr. Israel for more than half the year. Therefore, two-thirds of the rental payments are treated as child support as they are dependent on the contingency of their son residing with petitioner for at least half the year. Sec. 71(c).

Accordingly, we find that of the $13,808 in rental payments made by Dr. Israel under the terms of the separation agreement, as incorporated into the Judgment of Divorce, only one-third, or $4,603, is includable in petitioner's income as alimony under section 71.

To reflect the foregoing,

Decision will be entered
under Rule 155.