RESEARCH CORPORATION, PETITIONER *v*. COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 9458–10.          Filed February 29, 2012.

P is a corporation exempt from tax under I.R.C. sec. 501(c)(3) since the inception of that rule in 1954. P had paid unrelated business income tax for 1952, 1953, 1954, 2000, and 2001. In 1961 P established an employee pension plan. Upon termination of the plan in 2002, a direct transfer of $1,470,465 was made from the plan to a replacement plan pursuant to I.R.C. sec. 4980(d). Thereafter, P received a reversion of $4,411,395 in cash and property. P reported a reversion amount of $14,055 and paid $2,811 as excise tax pursuant to I.R.C. sec. 4980(a). I.R.C. sec. 4980(a) imposes an excise tax of 20% of the amount of any employer reversion from a qualified plan. Pursuant to I.R.C. sec. 4980(c)(1), "The term 'qualified plan' means any plan meeting the requirements of section 401(a) or 403(a), other than—(A) a plan maintained by an employer if such employer has, at all times, been exempt from tax under subtitle A". P argues it has, at all times, been exempt from tax under I.R.C. subtit. A. Therefore, the reversion was not received from a qualified plan and it is exempt from excise tax. R argues that P was taxed on unrelated business income and has not, at all times, been exempt from tax under I.R.C. subtit. A. Therefore, the reversion is from a qualified plan and is subject to excise tax under I.R.C. sec. 4980(a). *Held*: P has, at all times, been exempt from tax under I.R.C. subtit. A and is not liable for the excise tax imposed by I.R.C. sec. 4980(a). *Held*, *further*: We lack jurisdiction to award P a refund of its overpayment of excise tax.

192

*John Frederick Daniels, III*, for petitioner.
*Annie Lee* and *Peter James Gavagan*, for respondent.

### OPINION

HAINES, *Judge*: Respondent determined a deficiency of $879,468 in petitioner's Federal excise tax for 2003. The issues for decision after concessions are: (1) whether petitioner is liable for excise tax under section 4980 [1] for 2003 on a reversion received from an employee pension plan, and (2) if we find that petitioner is not liable for excise tax under section 4980, whether petitioner is entitled to an overpayment credit or refund.

### *Background*

The parties submitted this case fully stipulated pursuant to Rule 122. The parties' stipulation of facts, with attached exhibits, are incorporated herein by this reference. At the time the petition was filed, petitioner was a New York corporation with its principal place of business in Tucson, Arizona.

Petitioner is a nonprofit corporation incorporated in New York in 1912 and authorized to do business in Arizona. Petitioner is, and has been since the enactment of the income tax, exempt from Federal income tax under what is now section 501(c)(3). Petitioner was classified as a private foundation pursuant to a ruling letter from the Internal Revenue Service (IRS) dated October 31, 1986. Thereafter petitioner was reclassified as a section 4942(j) operating private foundation pursuant to a ruling letter from the IRS dated June 25, 1987.

In 1961 petitioner established the Research Corporation Employees Pension Plan (plan). The plan has been amended and restated from time to time and has received favorable determination letters from respondent. On July 21, 1999, petitioner sent a private letter ruling request pursuant to Rev. Proc. 99–4, 1999–1 C.B. 115, to respondent with respect to the taxability under sections 511 and 4980 of an asset

---

[1] Unless otherwise indicated, all section, chapter, subchapter, part, and subtitle references are to the Internal Revenue Code (Code), as amended and in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Amounts are rounded to the nearest dollar.

reversion to the plan sponsor upon termination of a defined benefit plan.

On July 12, 2000, petitioner provided to respondent a postconference submission of additional information pursuant to Rev. Proc. 2000–4, 2000–1 C.B. 115, with respect to its July 21, 1999, private letter ruling request. Petitioner also withdrew its request with respect to section 4980 in an October 2, 2000, letter to respondent. Respondent issued a private letter ruling on May 9, 2001, to petitioner in which he determined that the reversion of assets from the plan to petitioner would not constitute unrelated business taxable income (UBTI) under section 512(a) (1).

On May 23, 2003, respondent issued petitioner a favorable determination letter with respect to the plan's qualification under section 401(a) upon termination. Four days later, respondent issued another favorable determination letter with respect to the qualification of the plan, clarifying some issues and superseding his prior May 23, 2003, determination letter.

The plan terminated on May 31, 2002. At the time of its termination the plan held a potential gross reversion of $5,881,860. The plan made a direct transfer of 25% of the gross reversion, $1,470,465, to a qualified replacement plan under section 4980(d) known as the Research Corporation Employees' Replacement Pension Plan and transferred the remainder of the assets making up the reversion, $4,411,395, to petitioner.

Having withdrawn its ruling request on the section 4980 issue, on August 22, 2003, petitioner filed a Form 5330, Return of Excise Taxes Related to Employee Benefit Plans, that reported a reversion amount received from the employee benefit plan of $14,055 and included a payment of $2,811 in excise taxes pursuant to section 4980(a). In an attachment to the Form 5330, petitioner asserted that because it had, at all times, been exempt from tax under subtitle A, it was not subject to excise tax on the entire reversion pursuant to section 4980(a) and (c)(1)(A). However, petitioner also stated on the attachment to Form 5330: "for purposes of this submission, however, Research Corporation accepts that a portion of reversion is subject to the section 4980 'to the extent' Research Corporation has been subject to UBIT [unrelated business income tax], based upon the proportion of UBTI

received by Research Corporation in comparison to its other income".[2]

Petitioner based its calculation that only $14,055 of the total reversion of $4,411,395 was subject to the section 4980 excise tax upon a ratio of unrelated business taxable income reported in all years over total income it received for the years 1988 through 2001.[3]

Respondent, on January 22, 2010,[4] issued a statutory notice of deficiency to petitioner in which he determined that petitioner had underreported the amount of the reversion subject to section 4980 excise tax by $4,397,340[5] and, accordingly, was liable for a deficiency in excise tax of $879,468 and a failure to pay addition to tax pursuant to section 6651(a)(2) of $219,867.[6]

## *Discussion*

### I. *Burden of Proof*

As a general rule the taxpayer bears the burden of proving that the Commissioner's determinations are erroneous. Rule 142(a)(1); *Welch v. Helvering*, 290 U.S. 111, 115 (1933).

---

[2] Respondent argues that petitioner has conceded it is liable for the excise tax under sec. 4980 by submitting Form 5330, reporting a reversion subject to tax of $14,055 and paying an excise tax of $2,811. We do not view either the submission of Form 5330 or the statement as a concession. We note that all concessions are subject to the Court's discretionary review and may be rejected in the interests of justice. *See McGowan v. Commissioner*, 67 T.C. 599, 607 (1976). If the submission of the Form 5330 and the statement contained therein can be viewed as a concession, we reject it. Petitioner has maintained throughout this proceeding in its petition and its briefs that it is not subject to excise tax.

[3] For 1952, 1953 and 1954 petitioner reported UBTI and paid tax thereon. For 2000 and 2001 petitioner filed Forms 990–T, Exempt Organization Business Income Tax Return, reporting a total of $265,000 of unrelated debt-financed income (UDFI) upon which it paid unrelated business income tax. Respondent concedes that during all periods in which contributions were made to the plan, petitioner received no tax benefit because of its exempt status under sec. 501(c)(3) and because petitioner made no contributions to the plan in any period in which petitioner received UBTI or UDFI.

[4] The statutory notice of deficiency was issued more than 6 years after petitioner filed its Form 5530. The statute of limitations is an affirmative defense that must be specifically pleaded. Petitioner did not raise the statute of limitations as an affirmative defense in its pleadings for the taxable year at issue. Accordingly, we find that petitioner has waived that defense. *See* Rule 39.

[5] Respondent calculated the underreported amount by subtracting the $14,055 petitioner reported as a reversion from the $4,411,395 reversion actually received.

[6] Respondent has conceded that petitioner is not liable for the sec. 6651(a)(2) addition to tax.

II. *Whether Petitioner Is Liable for Excise Tax Under Section 4980*

A. *Section 4980*

Congress enacted section 4980 as part of the Tax Reform Act of 1986, Pub. L. No. 99–514, sec. 1132, 100 Stat. at 2478, to impose an excise tax on any assets reverting to an employer maintaining a qualified plan. An employer reversion is the amount of cash and the fair market value of other property received, directly or indirectly, by an employer from a qualified plan. Sec. 4980(c)(2)(A). A tax rate of 50% applies to an employer reversion unless the employer establishes a qualified replacement plan before receiving the reversion. [7] Sec. 4980(d). There is no dispute that petitioner established a qualified replacement plan pursuant to section 4980(d). Therefore, if the tax applies to petitioner's reversion, the tax rate is reduced to 20%. Sec. 4980(a), (d)(1)(A).

The excise tax is imposed only on employer reversions from "qualified plan[s]". The term "qualified plan" means any plan meeting the requirements of section 401(a) or 403(a), *other than a plan maintained by an employer if such employer has, at all times, been exempt from tax under subtitle A*. Sec. 4980(c)(1)(A). The meaning of the emphasized language is in dispute.

Petitioner claims that its plan is not a "qualified plan" as that term is defined in section 4980(c)(1)(A) because petitioner has been exempt from tax under subtitle A at all times during its existence. As a result, petitioner maintains that it is not liable under section 4980 for the 20% excise tax on the reversion it received upon termination of the plan. Respondent claims that the plan is a "qualified plan" because petitioner paid unrelated business income tax for the years 1952, 1953, 1954, 2000, and 2001. Because the tax on unrelated business income is a tax under subtitle A, respondent contends that petitioner has not, at all times, been exempt from tax under subtitle A.

---

[7] For a plan to qualify as a replacement plan, (1) 95% of the active participants in the terminated plan who remain as the employer's employees after the termination must be active participants in the replacement plan, sec. 4980(d)(2)(A), and (2) in general, there must be a direct transfer from the terminated plan to the replacement plan of at least 25% of the maximum amount the employer could receive as an employer reversion without regard to the increased tax rate provisions of sec. 4980(d), sec. 4980(d)(2)(B).

This Court is presented with a case of first impression: whether a section 501(c)(3) organization's employee pension plan becomes a "qualified plan" for purposes of section 4980 if the organization pays tax on unrelated business income.

B. *Statutory Interpretation*

The Supreme Court has held that "'in any case of statutory construction, * * * [its] analysis begins with the language of the statute, * * * And where the statutory language provides a clear answer, it ends there as well'". *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 254 (2000) (quoting *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999)). Similarly, the Supreme Court has stated that "where the language of an enactment is clear, and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended." *United States v. Mo. Pac. R.R. Co.*, 278 U.S. 269, 278 (1929). Thus we look to the specific language of the statute to determine whether it is clear and unambiguous.

Both respondent and petitioner argue that section 4980(c)(1)(A) is clear and unambiguous. However, it is the application of the statute upon which they disagree. We agree that the statute is clear and unambiguous. Thus the issue before us is whether petitioner "has, at all times, been exempt from tax under subtitle A".

C. *Whether Petitioner Has, at All Times, Been Exempt From Tax Under Subtitle A*

Chapter 1, subchapter F of subtitle A, titled "Exempt Organizations", contains a number of provisions relevant to our inquiry. Petitioner is, and has been at all times, an organization exempt from income tax before and after the enactment of section 501(c)(3). Section 501(a) provides that a section 501(c)(3) organization shall be exempt from taxation under this subtitle [subtitle A] unless such exemption is denied under sections 502 or 503". Sections 502 and 503 are inapplicable in this case. Furthermore, section 501(b) provides that

An organization exempt from taxation under subsection (a) shall be subject to tax to the extent provided in parts II, III, and VI of this subchapter,

but (notwithstanding parts II, III, and VI of this subchapter) shall be considered an organization exempt from income taxes for the purpose of any law which refers to organizations exempt from income taxes.

Part III of subchapter F is the only part relevant to our inquiry as it sets forth the rules for taxation of UBTI.

Section 511 imposes a tax on the UBTI of an organization described in section 501(c)(3). Section 512 defines UBTI as the gross income derived by an exempt organization from any unrelated trade or business regularly carried on by it, less certain deductions and modifications. Section 514(a) provides that income from unrelated debt-financed property is included in UBTI under section 512 and, as such, is subject to the unrelated business income tax provided by section 511.

For 1952, 1953, and 1954 petitioner reported UBTI and paid tax thereon, and for 2000 and 2001 petitioner reported UDFI and paid unrelated business income tax thereon. Respondent argues that petitioner has paid unrelated business income tax under sections 511, 512, and 514 and that such payment of tax is a tax under subtitle A. Therefore, respondent contends that petitioner is not an employer who has, at all times, been exempt from tax under subtitle A as is required by section 4980(c)(1)(A).

With respect to section 501(b), respondent argues that "the present case is not a revocation case; the Service is not seeking to revoke petitioner's tax-exempt status under [section] 501(c)(3). Rather, at issue is the imposition of the excise tax pursuant to [section] 4980 which is contained in subtitle D". Therefore section 501(b) is irrelevant. Moreover, respondent claims that section 501(b) is inapplicable to section 4980(c)(1)(A), "which deals with excise, not income, tax", and "explicitly and clearly is concerned with whether the organization has ever not been exempt from tax under subtitle A".

We disagree. We find that section 501(b) is directly on point and relevant to our inquiry into whether petitioner, has, at all times, been an organization exempt from tax under subtitle A. We also disagree with respondent's reading of section 501(b). Respondent would like us to ignore the plain language of section 501(b), which provides that a section 501(c)(3) organization shall be subject to tax to the extent it has UBTI but, notwithstanding any unrelated busi-

ness income tax paid, the organization "shall be considered an organization exempt from income taxes for the purpose of *any law* which refers to organizations exempt from income taxes". (Emphasis added.) Section 4980(c)(1)(A) is a law which refers to organizations exempt from tax under subtitle A, i.e., income taxes. Respondent argues that section 501(b) deals only with whether an organization will maintain its tax-exempt status for purposes of subchapter F. We disagree. Congress did not limit section 501(b) to laws under subchapter F, chapter 1, or even subtitle A. Section 501(b) refers to "any law", which includes the entire Code. Section 501(b) helps inform our understanding of section 4980(c)(1)(A) by explaining when an organization is considered exempt from tax under subtitle A.

We also disagree with respondent's interpretation of section 4980(c)(1)(A). The statute provides that the term "qualified plan means any plan meeting the requirements of section 401(a) or 403(a) other than a plan maintained by an employer if such employer has, *at all times, been exempt from tax under subtitle A*". (Emphasis added.) Respondent contends that the statute requires us to find whether petitioner "has ever not been exempt from tax under subtitle A". The statute is worded in the positive, not in the negative as respondent contends. Nevertheless, we find that petitioner has never not been exempt from tax under subtitle A, because of the effect of section 501(b). Moreover, the statute does not require us to determine whether the employer has ever paid a tax under subtitle A. Rather it requires us to determine whether the employer has always been considered exempt from tax under subtitle A. It is a very important distinction given Congress' enactment of section 501(b).

Petitioner argues that respondent's interpretation of the relevant language in section 4980(c)(1)(A), if applied to the identical language in other statutes, would create an absurd result. We agree. It is a well-established canon of statutory interpretation that "'identical words used in different parts of the same act are intended to have the same meaning.'" *United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 460 (1993) (quoting *Commissioner v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 159 (1993)).

A number of other statutes apply to an organization exempt from tax under subtitle A. Section 6672(a) imposes a

penalty on any person who is required to collect, truthfully account for, and pay over a tax imposed by the Code and willfully fails to do so. However, "no penalty is imposed by subsection (a) on any unpaid, volunteer member of any board of trustees or directors of an *organization exempt from tax under subtitle A*" if such member serves in an honorary capacity, does not participate in day to day or financial operations, and does not have actual knowledge of the failure on which such penalty is imposed. Sec. 6672(e) (emphasis added). Adopting respondent's interpretation of section 4980(c)(1)(A) would mean that a voluntary board member of a section 501(c)(3) organization who otherwise meets the requirements of section 6672(e) would still be liable for the penalty under section 6672(a) if the section 501(c)(3) organization incurred UBTI during the years in question. We find such an outcome to be at odds with the purpose of the statute.

Similarly, section 457 provides that any amount of compensation deferred under an eligible deferred compensation plan, and any income attributable to the amounts so deferred, shall be includible in gross income only for the taxable year in which such compensation or other income is paid or otherwise made available to the participant or other beneficiary, in the case of a plan of an eligible employer described in subsection (e)(1)(B). An eligible employer means any "*organization (other than a governmental unit) exempt from tax under this subtitle*." Sec. 457(e)(1)(B) (emphasis added). Section 457 is part of subtitle A. Applying respondent's interpretation of section 4980(c)(1)(A) to section 457(e)(1)(B) would lead to a result in which section 501(c)(3) organizations would become ineligible for section 457 deferred compensation plans upon receiving UBTI.

We find that petitioner is an organization that has, at all times, been exempt from tax under subtitle A. Therefore, petitioner's plan is not a qualified plan for purposes of section 4980 and petitioner is not liable for the excise tax thereunder.

D. *Legislative History*

Respondent alternatively argues that petitioner is not eligible for the exception under section 4980(c)(1)(A) because

of the following statement of legislative history: "The agreement provides that the excise tax does not apply to a reversion to an employer that has at all times been tax-exempt. Of course, this exception does not apply to the extent that such employer has been subject to unrelated business income tax or has otherwise derived a tax benefit from the qualified plan." H.R. Conf. Rept. No. 99–841 (Vol. II), at II–483 (1986), 1986–3 C.B. (Vol. 4) 1, 483. Having found that section 4980(c)(1)(A) is unambiguous, we do not rely on the legislative history in making our decision.[8] However, since respondent has raised legislative history in his briefs, we will briefly address its relevance.

Respondent argues that because the above-quoted statement uses the word "or" rather than "and", Congress intended that anytime an organization has been subject to unrelated business income tax it is automatically ineligible for the section 4980(c)(1)(A) exception. We do not agree with respondent's argument. Respondent ignores the phrase "to the extent". That phrase limits the application of the legislative history to a specific set of facts. When coupled with the phrase "or has otherwise" the legislative history addresses a set of facts where the tax-exempt organization, whether it incurred unrelated business income tax or not, derived a tax benefit from the qualified plan. Respondent has conceded that petitioner did not derive a tax benefit from the plan. In any event, as we have previously discussed, the statute is clear that an organization exempt from tax under subtitle A (i.e., petitioner) is exempt from excise tax under section 4980(c)(1)(A). Respondent's argument raises facts not present in our case and should be left to a future determination in which such facts are at issue.

We find that the plan is not a qualified plan for purposes of section 4980 and petitioner is not liable for the excise tax thereunder.

### III. *Whether Petitioner Is Entitled to an Overpayment Credit or Refund*

Having found that petitioner is not liable for the excise tax under section 4980, we now must turn to the issue of

---

[8] *See Garcia v. United States*, 469 U.S. 70, 76 n.3 (1984); *Venture Funding, Ltd. v. Commissioner*, 110 T.C. 236, 241–242 (1998), *aff'd without published opinion*, 198 F.3d 248 (6th Cir. 1999).

whether petitioner is entitled to an overpayment credit or refund for its payment of $2,811 in excise taxes under section 4980.

The Tax Court is a court of limited jurisdiction, and it may exercise its jurisdiction only to the extent authorized by statute. Sec. 7442; *Commissioner v. Gooch Milling & Elevator Co.*, 320 U.S. 418, 420 (1943). This Court is authorized to redetermine the amount of a deficiency for a taxable period as to which the Commissioner issued a notice of deficiency and the taxpayer timely petitioned the Court for review. *See* secs. 6212, 6213, and 6214. This Court also has jurisdiction to determine the amount of any overpayment a taxpayer made for a year that is properly before the Court on a petition to redetermine a deficiency. Sec. 6512(b)(1). If the Court determines that there is an overpayment and further determines the amount of the overpayment that is refundable in accordance with section 6512(b)(3), the overpayment amount thus determined "shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer." Sec. 6512(b)(1).

Although we have determined that an overpayment exists, our jurisdiction to order a refund or credit of an overpayment is limited and depends upon when the taxes were paid. *See* secs. 6511(a) and (b), 6512(b); *Commissioner v. Lundy*, 516 U.S. 235 (1996). Under section 6512(b)(3), we may order the credit or refund of an overpayment only if one of three conditions is met.[9] The first condition, set out in section 6512(b)(3)(A), is that the tax be paid after the mailing of the notice of deficiency, which did not occur here. Petitioner made its $2,811 payment on August 22, 2003, and the notice of deficiency was mailed on January 22, 2010.

---

[9] SEC. 6512(b). OVERPAYMENT DETERMINED BY TAX COURT.—

\* \* \* \* \* \* \*

(3) LIMIT ON AMOUNT OF CREDIT OR REFUND.—No such credit or refund shall be allowed or made of any portion of the tax unless the Tax Court determines as part of its decision that such portion was paid—

(A) after the mailing of the notice of deficiency,

(B) within the period which would be applicable under section 6511(b)(2), (c), or (d), if on the date of the mailing of the notice of deficiency a claim had been filed (whether or not filed) stating the grounds upon which the Tax Court finds that there is an overpayment, or

(C) within the period which would be applicable under section 6511(b)(2), (c), or (d), in respect of any claim for refund filed within the applicable period specified in section 6511 and before the date of the mailing of the notice of deficiency—

The second condition, set out in section 6512(b)(3)(B), allows a credit or refund of an overpayment if a claim for refund deemed filed on the date the notice of deficiency was mailed would have constituted a timely claim for refund of the overpaid amount under applicable limitations periods prescribed in section 6511(b)(2), (c), or (d). Since petitioner did not seek a refund before filing its petition, for purposes of section 6512(b)(3)(B) its claim is deemed filed on the date of the notice of deficiency, January 22, 2010.

Section 6512(b)(3)(B) directs the Court's attention to section 6511(b)(2), [10] which in turn instructs the Court to apply either a three-year or a two-year look-back period. Section 6512(b)(3)(B) limits this Court's jurisdiction to credit or refund an overpayment of taxes to taxes paid in either the three-year period or two-year period immediately preceding the date of the notice of deficiency, depending on whether the taxpayer qualifies for the three-year or two-year look-back period prescribed by section 6511(b)(2). A taxpayer qualifies for the three-year look-back period if the taxpayer filed a claim for refund within three years of the date the taxpayer filed its return. Petitioner's claim is deemed filed on January 22, 2010, the date of the notice of deficiency, more than three years after petitioner filed its Form 5330 on August 22, 2003. Thus, petitioner does not qualify for the three-year look-back period. A taxpayer qualifies for the two-year look-back period if the taxpayer did not file its claim for refund within three years of the date the taxpayer filed its return. Petitioner qualifies for the two-year look-back period. However, since petitioner paid its tax on August 22, 2003, more than two years before the filing of the notice of deficiency, we are foreclosed from issuing a credit or refund of the overpayment of taxes. Thus, the deemed claim under section 6512(b)(3)(B) offers no benefit to petitioner.

The third condition, set out in section 6512(b)(3)(C), applies where an actual claim for refund, which is timely under section 6511, has been filed before the mailing of the notice of deficiency and either has not been disallowed or, if disallowed, was or could have been the basis of a timely refund suit as of the date of the notice of deficiency. In such circumstances, any credit or refund is limited to taxes paid

---

[10] Sec. 6511(c) and (d) is not relevant to our inquiry.

within the periods specified in section 6511(b)(2), (c), or (d) and before the date of the notice of deficiency. Petitioner filed its claim for refund as part of its petition on April 26, 2010, after the mailing of the notice of deficiency.

We conclude that we lack jurisdiction to award petitioner a refund of its overpayment of excise tax.

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

> *Decision will be entered for petitioner as to the excise tax but not as to the overpayment or refund.*